## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *LISETTE G. PELLETIER,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 09-65-B-W |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled by bilateral carpal tunnel syndrome, bilateral lateral epicondylitis, parascapular and paratrapezial spasms, and cervical degenerative disc disease, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that, through her date last insured for benefits (September 30, 2008), the plaintiff had severe impairments of

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 18, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

bilateral carpal tunnel syndrome, right shoulder scapular spurs, right elbow lateral epicondylitis, and hypertension, Findings 1, 3, Record at 11; that, through her date last insured, she had no restrictions on her ability to stand, walk, or sit, could occasionally lift 10 pounds, and could occasionally perform fine and gross manipulation, Finding 5, *id*. at 12; that, through her date last insured, considering her age (47 years old, defined as a younger individual, on the alleged onset date of disability and 50 years old, defined as an individual closely approaching advanced age, in February 2008), education (limited and able to communicate in English), work experience (no transferable job skills), and residual functional capacity ("RFC"), there were jobs existing in significant numbers in the national economy that she could have performed, Findings 7-10, *id*. at 14; and that she therefore had not been under a disability at any time from August 1, 2005, her alleged disability onset date, through September 30, 2008, her date last insured, Finding 11, *id*. at 15. The Decision Review Board declined to review the decision, *id*. at 1-2, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(g)); *Bowen v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff complains that the administrative law judge erred in (i) finding that she had a limited education and was able to communicate in English, (ii) deeming her unrestricted in ability to stand, walk, or sit, (iii) failing to take into account, in his RFC assessment, nonexertional limitations resulting from pain in her shoulders and upper-back muscle spasms, (iv) omitting from his RFC assessment nonexertional limitations resulting from difficulty understanding and remembering detailed instructions, (v) relying on testimony of a vocational expert concerning the job of bakery worker, conveyor line, that was inconsistent with information supplied in the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"), and (vi) relying on testimony of a vocational expert concerning the job of counter clerk, photo finishing, that was inconsistent with information supplied in the DOT. *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 10) at 1-8. On the strength of the first point of error, reversal and remand are warranted. I briefly discuss the remaining points.

## I. Discussion

### A. Education, Ability To Communicate in English

The administrative law judge found the plaintiff to possess a "limited" education, defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). The commissioner "generally consider[s]

3

that a 7th grade through the 11th grade level of formal education is a limited education." *Id*. Nonetheless:

> Formal education that [a claimant] completed many years before [his or her] impairment began, or unused skills and knowledge that were a part of [his or her] formal education, may no longer be useful or meaningful in terms of [his or her] ability to work. Therefore, the numerical grade level that [he or she] completed in school may not represent [his or her] actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, [the commissioner] will use [the claimant's] numerical grade level to determine [his or her] educational abilities.

*Id*. § 404.1564(b).

In both a pre-hearing submission and during the plaintiff's hearing, her attorney argued that, although she had completed 10th grade, her education was in fact "marginal" given her status as a special education student during school and evidence that her math, reading, and writing skills fell well below those of a person with such an education. *See* Record at 20-21, 34-35, 37-39. "Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. § 404.1564(b)(2). The commissioner "generally consider[s] that formal schooling at a 6th grade level or less is a marginal education." *Id*.

In his pre-hearing submission and at hearing, the plaintiff's attorney also contended that his client, whose primary language is French, has difficulty communicating in English. *See* Record at 20-21, 37-39. "Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language." 20 C.F.R. § 404.1564(b)(5). Therefore, the commissioner "consider[s] a person's ability to communicate in English when [he] evaluate[s] what work, if any, he or she can do." *Id*.

The record contains evidence supportive of both contentions, including:

4

1.      Results of testing in September 2008 by MSAD 24 Adult & Community Education placing the plaintiff at a third-grade level in math and a fourth-grade level in reading. *See* Record at 164-65.

2.      Notes of case manager Jacques Violettte of Spectrum Specialized Services in Madawaska, Maine, who attempted unsuccessfully to find work for the plaintiff in 2005-06, indicating that she had limited reading and writing skills precluding her placement in certain jobs. *See id*. at 152-53, 157, 159, 162.

3.      Observations by the Social Security interviewer who completed the plaintiff's application for benefits that she "seemed to get flustered because she was confused about the paperwork with workers comp, her private insurance company, and now social security[,]" *id*. at 101, and that, although the plaintiff "[w]as able to sign her name twice and answer questions as asked[,]" she seemed "to have a bit of a language barrier[,]" *id*. at 134.

4.      The plaintiff's testimony at hearing that she knew how to make "[a] little" change, *id*. at 23, was "able to add a little[,]" had "a hard time" subtracting and multiplying, was "[n]o good at all" at dividing, did not know what fractions were, and could only accomplish a little bit of adding during the September 2008 testing at the adult education center, *id*. at 33-34.[2]

5.      The plaintiff's report in her application for benefits that she required special education services in school, did not understand instructions well, and had a language barrier. *See id*. at 130.[3]

---

[2] The plaintiff stated, in her application for benefits, that she could pay bills, count change, handle a savings account, and use a checkbook, although her husband balanced their checkbook. *See* Record at 128-29. Even assuming *arguendo* that this bespeaks a greater level of math skill than testified to at hearing, the administrative law judge should have addressed and resolved the question.

[3] Elsewhere in her application, the plaintiff indicated that she did not attend special education classes. *See* Record at 111. In her statement of errors, she asserts that the discrepancy is further evidence of her difficulty communicating. *See* Statement of Errors at 2. As counsel for the commissioner noted at oral argument, she also indicated in her application that she could speak, understand, read, and write more than her name in English. *See* Record at 103.
*(continued on next page)*

5

In his decision, the administrative law judge found, without any discussion of the plaintiff's arguments or evidence to the contrary, that she had a limited education and could communicate in English. *See id.* at 14-15. This was error. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted).

The error cannot be discerned to be harmless. At Step 5, the administrative law judge relied on vocational expert testimony that a person with the plaintiff's RFC could perform the representative jobs of bakery worker, conveyor line, DOT § 524.687-022, and counter clerk, photo finisher, DOT § 249.366-010. *See* Record at 15. Although the vocational expert stated that a marginal education would not preclude performance of the bakery worker job and would not *necessarily* preclude performance of the counter clerk job, *see id.* at 31-32, discrepancies between her description of those jobs and the descriptions contained in the DOT, discussed below, raise a question whether that assessment was reliable.

In any event, as the vocational expert acknowledged at hearing, *see id.* at 33, the counter clerk job is listed as having a General Educational Development ("GED") math level of 2, which requires the capacity to add, subtract, multiply, divide, and use fractions, *see id.*; *see also* DOT § 249.366-010. If one credits the plaintiff's testimony, she would not be capable of performing such a job. While the bakery worker job is listed as having a less demanding GED math level of 1, *see* DOT § 524.687-022, even that GED level requires abilities exceeding those that the plaintiff testified she possessed, *see id*. ("Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as

---

Regardless, her evidence should have been considered, and any conflicts resolved, by the administrative law judge.

6

part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.").[4]

At oral argument, counsel for the commissioner asserted that a finding of a marginal education would not have affected a determination of non-disability pursuant to rules of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid") that would have applied if the plaintiff's nonexertional limitations had not precluded use of the Grid. However, the administrative law judge plainly relied on vocational expert testimony, rather than the Grid, to determine the plaintiff capable of performing work existing in significant numbers in the national economy. *See* Record at 15. The Grid rules hence do not render the administrative law judge's errors harmless.

Reversal and remand are required for (i) proper adjudication of the plaintiff's assertions that her math, reading, and language skills are actually well below those of a typical person who has completed 10th grade and that she has difficulty communicating in English and (ii) reconsideration of whether a person with the skill levels found on remand, as well as the plaintiff's physical limitations, can perform other work existing in significant numbers in the national economy.[5]

---

[4] At oral argument, counsel for the commissioner asserted that the bakery worker job, which requires the lowest level of math skill, Level 1, does not demand math abilities beyond those acquired in third grade. However, that is not apparent from the face of the record or the DOT listing.

[5] In her statement of errors, the plaintiff takes the position that she should have been found illiterate. *See* Statement of Errors at 1-2. "Illiteracy means the inability to read or write." 20 C.F.R. § 404.1564(b)(1). The commissioner "consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id*. "Generally, an illiterate person has had little or no formal schooling." *Id*. The plaintiff does not explain how she squares her claim of illiteracy with the finding on recent testing that she possesses a fourth-grade reading level or her own representation in her application that she wears glasses when reading and to see writing displayed on television. *See* Statement of Errors at 1-2; Record at 131, 164-65. At oral argument, her counsel contended that she is functionally illiterate. My recommendation turns on my conclusion that the administrative law judge committed error in finding that the plaintiff had a limited education and was able to communicate in English, not that he erred in failing to find her illiterate. However, should the court agree that remand is required, the plaintiff is free to make such an argument to the commissioner on remand.

### B.  Other Points of Error

1. <u>Ability To Sit, Stand, and Walk</u>.  The plaintiff contends that the administrative law judge erred in rejecting the finding of Disability Determination Services ("DDS") consulting examiner Kenneth Senter, M.D., that she "should be able to sit, stand, and walk for one hour at a time" and that "[t]hese activities when prolonged, cause increase in right shoulder pain."  *See* Statement of Errors at 2 (quoting Record at 350).  Alternatively, she argues that the administrative law judge should have recontacted Dr. Senter for clarification.  *See id*. at 3.  I find no error.

The administrative law properly rejected this portion of Dr. Senter's opinion on the ground that it was unsupported by substantial medical evidence.  *See id*. at 14.  Nothing in Dr. Senter's own findings on examination, *see id*. at 348-50, or in the evidence to which the plaintiff points, which addresses spasms and pain in the plaintiff's shoulders, upper back, and elbows, *see* Statement of Errors at 2-3; Record at 170-74, 203, 353, 355-60, 361, 363, explains a sitting, standing, or walking restriction.

The duty to recontact a consulting examiner is not triggered unless a report is "inadequate or incomplete[.]"  20 C.F.R. § 404.1519p(b).  The record contains no objective medical evidence on the basis of which one could conclude that the plaintiff had sitting, standing, or walking restrictions.  Hence, no clarification was required.  *See, e.g., Farnsworth v. Astrue*, 604 F. Supp.2d 828, 857 (N.D. W. Va. 2009) ("An ALJ is required to re-contact medical sources only when the evidence before him is inadequate to determine whether the Claimant is disabled."); *Tucker v. Astrue*, Civil Action No. 2008-98 (WOB), 2008 WL 4181179, at *3-*4 (E.D. Ky. Sept. 5, 2008) (administrative law judge was not required to recontact consulting psychologist when

8

the objective medical evidence did not support the psychologist's overly restrictive opinion and the psychologist's own report was inconsistent with her opinion).

    2.    <u>Failure To Take Into Account Pain</u>.  The plaintiff asserts that the administrative law judge erred in failing to take into account nonexertional limitations resulting from pain in her shoulders and upper-back muscle spasms.  *See* Statement of Errors at 3-4.  She is mistaken.  The administrative law judge expressly stated that his RFC finding took into account not only the plaintiff's well-documented right-sided arm and shoulder complaints but also her less well-documented left-sided arm and shoulder pain and dysfunction.  *See* Record at 12; *see also id*. at 28-29.  He assessed her as capable of only occasionally lifting 10 pounds and only occasionally performing fine and gross manipulation.  *See* Finding 5, *id*. at 12.

    3.    <u>Failure To Take Into Account Mental Limitations</u>.  The plaintiff argues that the administrative law judge failed to take into account, in determining RFC, her "difficulty understanding and remembering detailed instructions."  Statement of Errors at 4.  While there is no finding of record that she has such a limitation stemming from a medically determinable mental impairment, the administrative law judge did err, as noted above, in failing to consider her asserted educational and English-language deficits.

    4.    <u>Conflict with DOT, Bakery Worker Job</u>.  The plaintiff contends that, in contravention of the requirements of Social Security Ruling 00-4p ("SSR 00-4p"), the administrative law judge failed to resolve inconsistencies between the testimony of the vocational expert regarding the job of bakery worker and the description of the job contained in the DOT.  *See id*. at 4-6.  There is indeed a discrepancy between the vocational expert's testimony that the job entails "standing at a conveyor belt" and "watching bakery products pass

by and picking out the ones that don't meet the standards[,]" Record at 30, and the DOT description that such a worker:

> Performs any combination of [the] following tasks in preparation of cakes along conveyor line: Reads production schedule or receives instructions regarding bakery products that require filling and icing. Inspects cakes moving along conveyor to detect defects and removes defective cakes from conveyor to reject bins. Positions cakes on conveyor for application of filling or icing by machine, observes filling or icing application to ensure uniform coverage, and places additional cake layers on coated layers, depending on number of cake layers in product. Observes cakes moving under automatic topping shaker and cake cutting machine to ensure uniform topping application and cutting. Smooths iced edges of cake, using spatula, and moves decorating tool over top of designated cakes to apply specified appearance. Notifies supervisor of malfunctions.

DOT § 524.687-022.

The administrative law judge erred in failing to detect, let alone resolve, this discrepancy. *See* SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 244 ("When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").[6]

While the vocational expert testified that a person with a marginal education could perform this job as she described it, it is not clear whether a person with such an education, or with the plaintiff's claimed educational and English-speaking deficits, could perform the job insofar as it entails reading a production schedule and receiving instructions regarding bakery products that require filling and icing.

---

[6] At oral argument, counsel for the commissioner contended that there is no discrepancy between the DOT's generalized description of the bakery worker job, which includes tasks that it indicates may or may not be performed in any given bakery worker job, and the vocational expert's testimony concerning bakery worker jobs with which she was familiar. I am unpersuaded. No "reasonable explanation" was offered for the vocational expert's omission of many of the possible duties listed in the DOT for this type of bakery worker, as required by SSR 00-4p.

5. <u>Conflict with DOT, Counter Clerk Job</u>. The plaintiff finally complains that, in contravention of the requirements of SSR 00-4p, the administrative law judge failed to resolve inconsistencies between the testimony of the vocational expert regarding the job of counter clerk and the description of the job contained in the DOT. *See* Statement of Errors at 6-8. The vocational expert testified that the job did not "require any particular level of education" and that, while a person would have to follow instructions and use manuals, this would "[n]ot necessarily" present difficulties for a person possessing a marginal education because most of the information would be given verbally. Record at 32. However, the DOT indicates that the job has a GED level 2 language rating, which requires the following reading capacity: "Read at a rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes." DOT § 249.366-010.

The administrative law judge again erred in failing to detect, let alone resolve, the conflict. Absent an explanation for the discrepancy between the reading requirements identified in the DOT and the vocational expert's testimony that most information is imparted orally, it is not clear that a person with a marginal education, let alone one with the plaintiff's claimed educational and English-language deficiencies, could perform the job.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum,*

*within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 30th day of September, 2009.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
